**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| **NEIGHBORHOOD DEVELOPMENT COLLOBORATIVE,** | |
| Plaintiff, | Civil Action No. AW-03-1283 |
| v. | |
| **MICHAEL VINCENT MURPHY, III,** *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

Currently before the Court is Plaintiff Neighborhood Development Collaborative's ("NDC") Motion for Leave to File Amended Complaint [79]. The Court has reviewed the pleadings and applicable law and has determined that a hearing is unnecessary. See Local Rule 105(6) (D. Md. 2004). For the reasons that follow, NDC's motion is granted.

## STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure provides that once a responsive pleading has been served, "a party may amend the party's pleadings only by leave of court or by written consent of the adverse party; and leave shall be given freely when justice so requires." Fed. R. Civ. P. 15(a). The general standard for determining "when justice so requires" is as follows:

> In the absence of any apparent or declared reason — such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. — the leave sought should, as the rules require, be 'freely given.'

Forman v. Davis, 371 U.S. 178, 182 (1962).  The decision whether to grant leave to amend falls within the discretion of the trial court; however, "federal rules strongly favor granting leave to amend." Medigen of Ky., Inc. v. Pub. Serv. Comm'n, 985 F.2d 164, 167-68 (4th Cir. 1993).  Indeed, the function of Rule 15(a) "is to enable a party to assert matters that were overlooked or were unknown at the time he filed his original complaint." Donovan v. Porter, 584 F.Supp. 202, 207 (D. Md. 1984) (citations omitted).

**DISCUSSION**

NDC's complaint stems from Defendants alleged unlawful activities regarding the management and refinance of several apartment properties.  NDC seeks the following amendments to its complaint:

(1) the addition of a $62,000.00 claim regarding post-closing repairs that allegedly arises out of the conduct, transactions, or occurrences set forth in the initial complaint;

(2) changing its security deposit claim, by alleging in its Amended Complaint that the deposits were owed to the NDC affiliates (instead of NDC), and that those affiliates have assigned their claim;

(3) pleading the existence of Cobblestone Affordable Housing, Inc.

(4) a contractual relationship between Cobblestone Affordable Housing and Community Management and that claims stem from this relationship.

Defendants argue that NDC's motion should be denied because (1) NDC inexcusably delayed amending the pleadings for over two years, thus delaying the proceedings and causing undue prejudice to the Murphy Defendants;[1] and (2) the Murphy Defendants were not on notice of the substantial amendments

---

[1] Defendants Michael Vincent Murphy, III, Marilyn Wilcox Murphy, and Community Management Services, Inc. are collectively referred to as the "Murphy Defendants."  Defendants Park Bridge Aeworth, LLC, Autumn Hills Union City, LLC, and Sandpiper Casselberry LLC are collectively referred to as "LLC Defendants."  Murphy Defendants and LLC Defendants are

2

sought. The Court will address each argument in turn.

Defendants first argue that because the present matter was filed in April of 2003, NDC's attempt to amend the complaint over two years later constitutes excessive delay. This argument is unpersuasive.

Defendants have failed to cite any cases from the Fourth Circuit to further their excessive delay argument. Despite Defendants insistence that a two year gap in amending the complaint constitutes "excessive delay" or "inexcusable delay," the Fourth Circuit has never established a standard of either excessive delay or inexcusable delay. Indeed, it is well-established in the Fourth Circuit that "delay alone is not sufficient to deny leave to amend. The delay must be accompanied by prejudice, bad faith, or futility." Johnson v. Orowheat Foods Co., 785 F.2d 503, 509-10 (4th Cir. 1986) (citing Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)). As explained by the court in Davis, the Foman factors "embody a principle which focuses on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to the protection of the judicial system or other litigants." 615 F.2d at 613. Thus, absent prejudice, futility, or bad faith, the mere existence of a two year gap in amending the complaint is an insufficient reason to deny NDC's motion to amend its initial complaint.

Defendants argue that they will be prejudiced by the amendments because they had no notice of the claims set forth in the amendments. Stated differently, Defendants argue that the proposed amendments do not relate back to the claims in the initial complaint. This Court cannot agree.

Pursuant to Rule 15(c)(2), "An amendment of a pleading relates back to the date of the original

---

collectively referred to as "Defendants."

3

pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The Fourth Circuit has set forth a two-prong test for determining whether an amendment relates back: (1) "[f]irst, to relate back there must be a factual nexus between the amendment and the original complaint; and (2) "[s]econd, if there is some factual nexus an amendment is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." Farb v. Federal Kemper Life Assur. Co., 213 F.R.D. 264, 267 (D. Md. 2003) (citation omitted).  It is undisputed that a factual nexus exists here. The amendments all stem from the same conduct, transactions, and occurrences described in the original complaint, i.e., Defendants' actions surrounding the management of several apartment properties and responsibility for costs related to the refinance of these properties. Thus the only question is whether, under the second prong, Defendants had a lack of notice and undue prejudice regarding NDC's proposed amendments.

Defendants first contend that the original complaint failed to provide notice of a "new" claim of $62,000 for post-closing repairs.  In particular, Defendants focus on the amended post closing repair claim has a wholly different dollar amount, and poses a totally different theory of recovery.  Neither argument is persuasive.

In the original complaint, NDC clearly placed Defendants on notice that NDC was claiming damages caused by Defendants mismanagement of apartment properties and unlawful conduct in connection with the refinance closing. Specifically, the original complaint's section entitled "new escrows" alleged, *inter alia*, that NDC is entitled to a reimbursement because "[a]t the 3-Pack refinance closing, [NDC's] net proceeds were debited $285,432.98 to cover the completion, real estate tax, and property

4

insurance escrows required by the lender for Defendants' new loans." In the amended complaint, again under the section entitled "Post-closing Repairs" it is alleged that NDC is entitled to a reimbursement because "[a]t the 3-Pack refinance closing, [NDC's] net proceeds were debited $62,800 for post-closing repairs . . . . Nevertheless, at the 3-Pack refinance closing, escrows were established to ensure that post-closing repairs were made, and these escrows were established out of the proceeds due [NDC]. . . ." Based on this language, it appears that the amended complaint's post-closing repairs are simply a clarification of the original claims for closing escrows called "new escrows." Following the commencement of discovery, NDC appears to allege that it should be reimbursed for "new escrows" to cover not only the completion, real estate tax, and property insurance escrows, but also to cover the post-closing repair escrow. Thus, while the post closing repair escrow was not expressly referenced in the original complaint, this Court finds that Defendants certainly knew that NDC's original complaint asserted damages based on the establishment of closing escrows.

Moreover, this Court has previously emphasized that "[a]n amendment will not be disallowed merely because it asserts a new theory of recovery." Farb, 213 F.R.D. at 268 (citing Ward Elec. Serv. Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987)). Thus, the mere fact that NDC's initial claim may have been a breach of contract claim, whereas the amended claim poses a whole new theory, does not entitle Defendants to disallow an amendment for lack of notice. Accordingly, the new claim of post-closing repairs relates back to the filing of the original complaint.

Defendants next argue that the Murphy Defendants lacked prior notice of the security deposit claim and lacked prior notice of a claim being pursued based upon the rights of Cobblestone Affordable Housing, Inc. ("Cobblestone"). Specifically, Defendants claim that NDC changed the nature of the security deposit

claims by now alleging that the deposits were owed to the NDC affiliates (instead of NDC), and that those affiliates have assigned their claims. Defendants also allege that the amended version of the complaint pleads the existence of Cobblestone, which was not previously mentioned. Again, this Court cannot agree.

NDC's original complaint included claims that Defendants' improperly withheld security deposits for the subject apartment properties. By now alleging that the deposits were owed to the NDC affiliates, and that those affiliates have assigned their claims does nothing more than add more specific facts to the more general security deposit claim articulated in the original complaint. NDC's clarification of the facts surrounding the security deposit claim certainly does not alter the undisputed fact that Defendants knew that such claims were posited in the original complaint. See Robinson v. GEO Licensing Co. LLC, 173 F.Supp.2d 419, 425 (D. Md. 2001) ("It is acceptable to amend a complaint to add additional facts in order to amplify a previously alleged claim.") (quotation marks omitted). Furthermore, even if NDC changed the nature of the security deposit claim Defendants would not be entitled to relief. As previously mentioned, "a new theory of recovery is [an] insufficient reason to disallow an amendment." Id. at 426. Accordingly, the security deposit claim relates back to the filing of the original complaint.

Furthermore, Defendants also took written and oral discovery regarding NDC's security deposit and the relationship of NDC's affiliates, including Cobblestone, to these claims. In its Answer to Interrogatory No. 27 from the Murphy Defendants, regarding NDC's security deposit claim, NDC stated, in relevant part:

> Subject to and without waiving the General Statements and Objections, NDC states that $115,266 is due from Defendants for reimbursement of payments made by NDC concerning security deposit liabilities at Canterbury Lane and Las Palmas I. At the time these properties were transferred to third parties (from NDC Center for Affordable Solutions in Housing of Tampa, Inc. ("NDC Tampa") with respect to Las Palmas I and

> from Cobblestone Affordable Housing, Inc. ("Cobblestone"), an NDC affiliate, with respect to Canterbury Lane), Community Management had possession and control over the security deposit accounts. . . . Final HUD-1 Settlement Sheets for the transfer of these properties reflect payments by NDC and/or Cobblestone for security deposit liabilities totaling $98,491 for Canterbury Lane and $16,775 for Las Palmas I. Accordingly, NDC has a claim for these amounts against Defendants.

Additionally, NDC has also presented exhibits which show that Defendants also inquired about the issue of security deposits and the role of NDC's affiliates, like Cobblestone, at the depositions of Messrs. Cole and Carlisi. Accordingly, this Court finds that Defendants had notice of the change in the security deposit claim and the pleading of Cobblestone.

Defendants also argue that allowing the proposed amendments will cause "extreme" prejudice and "greatly" delay the case. Specifically, Defendants assert that NDC's motion should be denied because additional discovery will be needed on the "new" claims, and Defendants efforts will be hindered because the time to propound written discovery regarding these new claims has passed. This argument is unpersuasive.

It is clear that Defendants already have received written and oral discovery concerning these issues. Moreover, given that discovery is still ongoing and no dispositive motions deadline or trial date has been set, the Court does not believe that Defendants' ability to defend has been unduly hindered. See Robinson, 173 F.Supp.2d at 426 (finding that additional discovery will not prejudice defendants were discovery was ongoing and the trial date months away).

Defendants also assert that NDC's motion should be denied because of "inexcusable delay" in seeking to amend. This argument lacks merit. As previously mentioned, "delay alone is not sufficient to deny leave to amend. The delay must be accompanied by prejudice, bad faith, or futility." Johnson, 785

F.2d at 509-10. Here, Defendants do not even allege bad faith, and as explained above, NDC's amendments will not prejudice Defendants. Furthermore, the facts here do not show that NDC "inexcusably" delayed in moving to amend. Although NDC filed its complaint in April of 2003, discovery in this case did not commence until well after that date as the scheduling order was entered on April 1, 2004. Final responses to NDC's written discovery requests were not obtained from Defendants until December of 2004. Following discussions regarding the production of additional discovery from Defendants, NDC filed a motion to compel. On May 13, 2005, this Court granted NDC's Motion to Compel and ordered Defendants to produce additional documents. On May 23, 2005, Defendants moved for reconsideration of the order compelling production of certain documents.

In short, prior to filing its motion for leave to amend, NDC did not sit idly by waiting to surprise Defendants with new issues that would change the nature of the case on the eve of trial. Instead, it appears that NDC merely used the discovery process to clarify and amplify its claims surrounding Defendants' management of the subject apartment properties and the refinance of those properties. Accordingly, this Court finds any delay in filing the proposed amendments reasonable given the timeframe of discovery, the volume of discovery produced in this case, and the discovery disputes that remain ongoing.

**CONCLUSION**

For the aforementioned reasons, the Court GRANTS NDC's Motion for Leave to File an Amended Complaint [79].  An Order consistent with these rulings shall follow.


August 29, 2005                                        /s/
Date                                              Alexander Williams, Jr.
                                                  United States District Judge