**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

NEIGHBORHOOD DEVELOPMENT
COLLABORATIVE,                                  *

           Plaintiff,                           *

              v.                           *          Civil Action No. AW-03-1283

MICHAEL VINCENT MURPHY, III,
et al.,                                         *

           Defendants.                       *

                       * * * * *

<u>**MEMORANDUM OPINION**</u>

Presently pending before the Court is Plaintiff's Motion to Rescind Order of Magistrate

Judge [96]. The Court has reviewed the entire record, as well as the pleadings with respect to the

instant motion.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the

reasons stated below, Plaintiff's motion will be denied-in-part and granted-in-part.

**I.**      <u>**FACTUAL & PROCEDURAL BACKGROUND**</u>

On April 26, 2005, this action was referred to Magistrate Judge William Connelly for

resolution of all discovery disputes and related scheduling matters. On May 13, 2005, Judge

Connelly entered an order partially granting a motion by Plaintiff Neighborhood Development

Collaborative ("Plaintiff" or "NDC") to compel the production of certain documents. (Letter Order

of May 13, 2005.) Judge Connelly ruled that NDC was entitled to obtain documents from the law

firm of Arnall Golden Gregory, LLP ("AGG"), despite Defendant Vincent Murphy's ("Murphy")

claim that those documents were protected by the attorney-client privilege. Judge Connelly found

that NDC had presented sufficient evidence to establish that AGG had engaged in joint

representation of Plaintiff NDC and Defendant Murphy, such that the attorney-client privilege did not apply between them. Judge Connelly noted, however, that Plaintiff's assertion of joint representation could be overcome by "an affidavit from [attorneys at AGG] denying any legal representation of Plaintiff. . . ." (*Id.* at 7.)

Judge Connelly also found that the AGG documents were not protected by the attorney-client privilege because Murphy had waived the privilege by sharing confidential information with a third party, Robert McMaster ("McMaster"), who had been retained by Murphy as a financial consultant and adviser and had apparently acted as conduit of information between Murphy and AGG. Judge Connelly held that the "intermediary doctrine," which would have preserved the privilege despite the involvement of a third party, was inapplicable because McMaster was an agent of the client, not of the attorney.

Defendant Murphy and certain codefendants (collectively, "Defendants") moved for reconsideration, arguing that Judge Connelly erred with respect to his interpretation of the intermediary doctrine and his finding of joint representation. In support of their motion, Defendants submitted an affidavit from Alison Drummond, a partner at AGG, asserting that there had been no joint representation of Murphy and NDC and that AGG solely represented Murphy. In light of this affidavit, as well as excerpts from Ms. Drummond's deposition transcript, copies of the engagement letters from AGG to Murphy, and copies of various emails, Judge Connelly found that AGG had *not* jointly represented Murphy and NDC. Judge Connelly also agreed with Defendants that his prior interpretation of the intermediary doctrine had been erroneous; that the doctrine, in fact, protected the privilege with respect to agents of the client *as well as* agents of the attorney, provided that the assertedly privileged communication was made in confidence for the purpose of obtaining legal

advice from an attorney. Finding that this standard had been met, Judge Connelly granted the reconsideration motion, ruling that the AGG documents were protected by the attorney-client privilege.

On August 19, 2005, Plaintiff NDC filed the instant Motion to Rescind, objecting to Judge Connelly's application of the intermediary doctrine, his findings regarding the alleged joint representation, and his failure to consider Defendants' alleged communications with other third parties. That motion is ripe, and the Court now issues this opinion.

## II.   <u>STANDARD OF REVIEW</u>

Pursuant to 28 U.S.C. § 636(b)(1)(A), non-dispositive pretrial matters may be referred to a magistrate judge for hearing and determination.  *Berman v. Congressional Towers Ltd. Pshp.-Section I*, 325 F. Supp. 2d 590, 592 (D. Md. 2004). *See also* Fed. R. Civ. P. 72(a). Court have consistently found discovery motions to be non-dispositive within the meaning of Fed. R. Civ. P. 72(a). *FEC v. Christian Coalition*, 178 F.R.D. 456, 460 (E.D. Va. 1998). A district court owes substantial deference to a magistrate judge in considering a magistrate judge's ruling on a non-dispositive motion.  *See id.*  Indeed, a district judge may modify or set aside any portion of a magistrate judge's non-dispositive ruling only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  *Id.*  The "clearly erroneous" standard applies to factual findings, while legal conclusions will be rejected if they are "contrary to law." *MMI Prods v. Long*, 2005 U.S. Dist. LEXIS 21431, at *12 (D. Md. 2005). There being no evidence in this case that the discovery order at issue is dispositive, this Court will review Judge Connelly's challenged decision under the deferential "clearly erroneous or contrary to law" standard.

## III.   <u>ANALYSIS</u>

A.      Intermediary Doctrine

NDC contends that Judge Connelly's application of the intermediary doctrine in his August 3, 2005 Letter Order granting Defendant's Motion for Reconsideration was contrary to law. NDC argues that although Judge Connelly relied on *In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998), in concluding that the doctrine applies to agents of the client as well as agents of the attorney, he ignored an essential part of *Lindsey*'s holding when he failed to consider the threshold issue of "whether the client had a fundamental inability to communicate with his attorney without an intermediary." (Pl.'s Mot. to Rescind. at 6.) NDC asserts that, pursuant to *Lindsey* and other case law, the mandatory first step in evaluating claims of privilege under the intermediary doctrine is to determine whether the client is unable to communicate with his attorney without the intermediary's assistance. Here, Judge Connelly did not find, and Murphy would unlikely have been able to demonstrate, that Murphy had a "fundamental inability to communicate" with AGG without McMaster's assistance. NDC further argues that Judge Connelly also bypassed the second requisite step, which is to determine whether the agent acted as a "true intermediary" during each and every allegedly privileged communication, or whether the agent overstepped his role by changing the message and interjecting himself into the chain of communication.

This Court finds that Judge Connelly's application of the intermediary doctrine was not contrary to law. To argue that *Lindsey* requires a showing of fundamental inability to communicate without the intermediary's assistance, as Plaintiff does here, is to misread the case. *Lindsey* involved assertions of privilege by Bruce Lindsey, Deputy White House Counsel and Assistant to President Clinton, with respect to communications between Lindsey and President Clinton's private attorneys in the Paula Jones litigation. The *Lindsey* court noted that, as in the present case:

> The parties dispute whether the use of an agent for communication between the attorney and the client must be 'reasonably necessary' in order for the agent to fall within the attorney-client privilege, as the Independent Counsel urges, or whether the privilege can cover any agent used for securing legal advice regardless of the client's need for the agent, as the President contends.

*Lindsey*, 158 F.3d at 1279. In a footnote, the court illustrated that authorities on the subject were divided. *Id.* at 1280 n.13.[1] The court went on say that, even under the more stringent standard urged by the Independent Counsel, the President's use of Lindsey as an intermediary could be viewed as reasonably necessary. *Id.* at 1279-80 (discussing the "unavoidable, virtually full-time demands" of the office of the President and the federal courts' tradition of deference to Presidential responsibilities). The *Lindsey* court did *not*, however, expressly adopt the "reasonable necessity" standard, nor did it hold that, as a general matter, a client must demonstrate a fundamental inability to communicate without the help of the intermediary. As such, Plaintiff's reliance on *Lindsey* is misplaced. *Lindsey*'s core holding—that, "[i]n considering whether a client's communication with his or her lawyer through an agent is privileged under the intermediary doctrine, the *critical factor* is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer," *id.* at 1280 (internal citations and quotation marks omitted) (emphasis added)—buttresses Defendants' arguments and Judge Connelly's ruling.

---

[1]That footnote reads:

> *Compare* Proposed Fed. R. Evid. 503(a)(4), reprinted in 56 F.R.D. at 236 (requiring that the use of an intermediary be "reasonably necessary"); Restatement [of Evidence] § 120 cmt. f. (same) *with* 1 McCormick on Evidence § 91 (4th ed. 1992) (finding it irrelevant whether the use of the intermediary was "reasonably necessary"); 3 Weinstein's Federal Evidence § 503 (2d ed. 1997) (same).

*Lindsey*, 158 F.3d at 1280 n.13.

In addition, Plaintiff's Motion to Rescind cites no case law from this jurisdiction in support of the proposition that a party advancing a claim of privilege under the intermediary doctrine must demonstrate a fundamental inability to communicate without the aid of the intermediary. Absent substantial countervailing authority, this Court is not prepared to rule that Judge Connelly's interpretation of the intermediary doctrine was contrary to law. *Black & Decker Corp. v. United States*, 219 F.R.D. 87 (D. Md. 2003), cited by Plaintiff in its Reply, is readily distinguishable from the instant case. *Black & Decker* involves the plaintiff corporation's assertion of privilege with respect to communications with a third-party accounting firm. Black & Decker argued that the involvement of its in-house counsel in the chain of communications was sufficient to shield them from discovery under attorney-client privilege. In analyzing Black & Decker's claims, Magistrate Judge Gesner relied on *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), and its progeny, cases that specifically address the attorney-client privilege in the context of communications with accountants. Those cases turn largely on whether the accountant is "translating" complex accounting concepts in order to facilitate communications between client and counsel, *id.* at 921-22, or whether the accountant is providing independent financial advice. *See In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1191 (4th Cir. 1991) (when client used accountant to explain facts to attorney, attorney-client privilege protected only communications made at meeting with attorney and those immediately prior to meeting—earlier communications between client and accountant were outside scope of attorney-client privilege).

In *Black & Decker*, the court rejected the plaintiff's claims of privilege, noting that the third-party accounting firm's primary role was to provide tax and business advice, rather than to assist the plaintiff's attorneys in providing legal advice. *Black & Decker*, 219 F.R.D. at 90-91. Neither *Black*

*& Decker* nor the cases cited therein are directly apposite to the case at hand, in which, according to Judge Connelly, Plaintiff failed to demonstrate that "McMaster's actions as an agent extended beyond the scope of transmitting information or facilitating communications under the intermediary doctrine." (Letter Order of August 3, 2005, at 4.)  Judge Connelly's observation that McMaster's role was largely one of "transmitting information" is a factual finding that this Court will not disturb absent a showing of clear error, *see Berman*, 325 F. Supp. 2d at 592, a showing which has not been made here. This Court may not substitute its own conclusions for those of the magistrate judge, provided that there is any evidence to support the magistrate judge's finding, and that finding is reasonable. *Tri-Star Airlines, Inc. v. Willis Careen Corp.*, 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999).

In contrast to the role played by the accounting firm at the center of *Black & Decker*, McMaster's role in the instant case appears most analogous to that of the business consultant in *In re Bieter*, 16 F.3d 929 (8th Cir. 1994). In *Bieter*, a real estate consultant who assisted the client in a real estate project and in dealing with the client's attorney was held to be a representative of the client to whom the attorney-client privilege extended. *Id.* at 939-40. The *Bieter* court reached its decision by analogizing to corporate attorney-client privilege and finding that, although the third party consultant was an independent contractor, he essentially functioned as the plaintiff's employee with respect to the transaction at issue. The court did not find it necessary to consider whether Bieter had a fundamental inability to communicate with his attorneys without the aid of an intermediary. The court determined that the consultant was, "for purposes of the privilege, the functional equivalent of Bieter's employee, and the communications in question fell within the scope of his duties, were made at the behest of his superior, and were made for the purpose of seeking legal

advice for Bieter." *Id.* at 940. Here, McMaster was engaged by Murphy as a financial consultant and adviser and there is no indication that he ever betrayed that confidence or at any time acted in a manner inconsistent with Murphy's interests. Functionally, McMaster was acting as Murphy's employee when he first made contact with AGG and during subsequent communications between the parties, and Murphy had every reason to believe that those communications would remain confidential. Accordingly, Plaintiff has not convinced this Court that Judge Connelly was required to consider whether Murphy had a fundamental inability to communicate without McMaster's aid, nor that Judge Connelly's failure to do so was somehow contrary to law.

NDC also argues that Judge Connelly erred by not evaluating whether McMaster was acting as a "true intermediary" during each and every allegedly privileged communication. In support, NDC cites to *Lindsey*, where the court of appeals remanded for a determination of "when, if ever, Lindsey was acting as a true intermediary," as opposed to when Lindsey was providing "legal contributions as an extra lawyer." *Lindsey*, 158 F.3d at 1281. In making this argument, NDC fails to address the reason why this particular determination was so crucial to the *Lindsey* court, a reason which renders the "true intermediary" portions of that opinion largely inapposite to the case at hand—in *Lindsey*, the court had already found that, as a government attorney, Lindsey could not take advantage of government attorney-client privilege to conceal, from a grand jury investigating potential criminal acts by government officials, legal advice he had provided to his client the President. *Id.* at 1278. The court emphasized the unique role played by government attorneys, "who stand in a far different position from members of the private bar" with respect to "investigations of federal criminal offenses, and especially offenses committed by those in government." *Id.* at 1272. The court went on to describe the oath of office taken by all executive officials, to quote from the

writings of James Madison, and to discuss the public's interest in having transparent and accountable government. *Id.* at 1273-74.

In short, the *Lindsey* court found it necessary to circumscribe the reach of government attorney-client privilege, despite its observation that doing so would likely chill communications between government officials and government lawyers, because of the considerable public interest in uncovering official wrongdoing. This background explains why the court found it essential to distinguish between those occasions where Lindsey merely passed along information and those where he "added value," because any independent advice contributed by Lindsey was held to be both discoverable and, because of Lindsey's status as a government official, of potentially significant public concern. Such a situation is not present here, where the evidence suggests that McMaster was at all relevant times acting as an agent of Murphy. Unlike Lindsey, McMaster's loyalties ran solely to one master, rather than being divided between his client/principal and the public-at-large. Consequently, Murphy had every reason to expect that communications between McMaster, his agent, and AGG, his attorneys, would remain confidential. Furthermore, Judge Connelly's determination that, consistent with the role of a true intermediary, McMaster's actions as an agent consisted of "transmitting information" and "facilitating communication" is a factual finding entitled to significant deference. *See Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985) (findings of fact should be affirmed unless the reviewing court's view of the entire record leaves the court with "the definite and firm conviction that a mistake has been committed.") (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Judge Connelly reached his decision after reviewing affidavits, deposition testimony, exhibits presented in connection with the Motion to Compel and the Motion for Reconsideration, and materials submitted for *in camera* review.

9

Consequently, this Court is not left with "the definite and firm conviction that a mistake has been committed," and is comfortable deferring to the wisdom of the magistrate court.

### B.    Implied Joint Representation

NDC also contends that Judge Connelly erred by concluding that AGG did not engage in joint representation of Murphy and NDC but rather represented "Murphy and his interests only." The evidence relied upon by Judge Connelly—including an affidavit from AGG partner Allison Drummond and copies of the engagement letters between AGG and Murphy—clearly indicates that there was no express joint representation. Furthermore, NDC has presented no evidence indicating that Murphy ever believed that AGG represented both himself and NDC.  However, NDC argues that even though there was no *express* joint representation, and even though Murphy considered AGG to be his counsel alone, NDC had reason to believe that it was represented by AGG, and this reasonable belief gave rise to an *implied* joint representation of NDC and Murphy. Because of this implied joint representation, NDC contends, the attorney-client privilege between AGG and Murphy has been waived. The Court finds this argument unpersuasive.

First, NDC is correct in asserting that an attorney-client relationship may arise by implication. S*ee Attorney Grievance Comm'n v. Brooke*, 374 Md. 155, 175 (2003) ("The [attorney-client] relationship may arise by implication from a client's reasonable expectation of legal representation and the attorney's failure to dispel those expectations."); *Attorney Grievance Comm'n v. Shaw*, 354 Md. 636, 650-51 (1999) ("The determination of whether an attorney-client relationship exists can, and often must, be implied from the facts and circumstances of the given case."). Second, there is no dispute that parties to a joint representation are barred from asserting the attorney-client privilege against one another. *See, e.g., Ashcroft & Gerel v. Shaw*, 126 Md. App. 325, 354 (2000)

("when two or more persons with a common interest engage an attorney to represent them with respect to that interest, the attorney privilege against disclosure of confidential communications does not apply between them"). What the Court takes exception to is NDC's effort to merge these two principles—to argue, in effect, that a joint representation of Party A and Party B may somehow arise through the expectations of Party B alone, despite Party A's views to the contrary.[2] This position is untenable, because it would, as Defendant Murphy points out, "allow the mistaken (albeit reasonable) belief by one party that it was represented by an attorney, to serve to infiltrate the protections and privileges afforded to another client." (Def. Murphy's Resp. to Pl.'s Mot. to Rescind, at 12.) In other words, NDC suggests that Party A's (Murphy's) attorney-client privilege may be eviscerated by Party B's (NDC's) erroneous belief that it, too, was represented by Party A's counsel (AGG). Unsurprisingly, NDC cites no authority in support of this remarkable proposition. Moreover, NDC's argument runs contrary to the general policy that joint representations of clients with potentially adverse interests should be undertaken only when subject to very narrow limits. *See Crest Inv. Trust, Inc. v. Comstock*, 23 Md. App. 280, 302-303 (1974) (stressing the need for full disclosure of all possible dangers inherent in dual representation). Accordingly, the Court finds NDC's claim of implied joint representation to be without merit.

C.   Alleged Disclosures to Other Third Parties

NDC also contends that Judge Connelly erred by not addressing its argument that the AGG

---

[2]The Court does not pass judgment on whether a joint representation may ever arise by implication; presumably, two non-adverse parties may, through their dealings with an attorney, come to jointly believe that the attorney represents the both of them. If that belief is reasonable, then an implied joint representation might result. Such a situation, however, is not presently before the Court, as NDC has failed to adduce evidence demonstrating that Murphy shared its misapprehension of joint representation.

documents are not protected from disclosure by the attorney-client privilege because of communications between AGG attorneys and third parties other than McMaster.[3] In support, NDC cites to various entries in the privilege log produced by Defendants. The majority of these entries cite handwritten notes of telephone conversations between AGG attorneys and various individuals. NDC argues that Defendants have failed to satisfy their burden of demonstrating that these documents are privileged. NDC further argues these privilege log entries demonstrate the disclosure of confidential information to third parties, thereby constituting a waiver of the privilege with respect to all of the AGG documents. Defendants have claimed that these documents are protected by both attorney-client and work product privileges, and that the possible presence of non-privileged documents in the privilege log in no way renders the remainder of the listed documents discoverable.

NDC's contention that the handwritten notes of conversations between AGG attorneys and various third parties should not be shielded from disclosure may have merit. NDC correctly asserts that the work product privilege is unlikely to be applicable to these documents because they appear to have been prepared in the ordinary course of business, rather than in anticipation of litigation. *See National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). Therefore, the fact that documents in question may consist of the "mental impressions, conclusions, opinions, or legal theories" of AGG attorneys, and would, if prepared in anticipation of litigation, be "absolutely immune" from discovery, *see id.*, is likely irrelevant here. If they were not made in

---

[3]That Judge Connelly did not address this line of argument is not surprising, given that NDC did not raise this issue in its original Motion to Compel, and only briefly addressed it, for the very first time, in its Reply to Defendants' Responses in Opposition to NDC's Motion to Compel. This matter was next raised in a footnote in NDC's Response to Defendants' Motions for Reconsideration. In neither instance did NDC cite to any specific "nonprivileged" communications, nor did NDC allege with any particularity how those communications may have constituted the disclosure of confidential information.

anticipation of litigation, "the inquiry ends because the material is not protected." *Sandberg. v. Virginia Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992). Furthermore, although documents may be protected under attorney-client privilege, the privilege is to be strictly construed, *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir. 1984), and the proponent of the privilege bears the burden of establishing its applicability. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). As the Fourth Circuit explained in *(Under Seal)*, "in practical terms, this burden requires the proponent to explain, through ex parte submissions if necessary to maintain confidentiality, the significance or meaning of an otherwise cryptic document." 748 F.2d at 876. "It is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit, to satisfy this burden, and an improperly asserted privilege is the equivalent of no privilege at all." *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986). Most significantly, the attorney-client privilege does not protect information obtained by the attorney from sources other than the client, or notes or memoranda summarizing such information. *See Republican Party of North Carolina v. Martin*, 136 F.R.D. 421, 426-27 (E.D.N.C. 1991) (noting that memoranda or briefs prepared for prosecuting a case that do not "reveal information supplied in confidence by the client" are not privileged).

Thus, to the extent that certain documents listed in Defendants' privilege log are not based upon information supplied in confidence by Defendants, but rather consist of notes and summaries of attorneys' conversations with third parties, then those documents may in fact be discoverable. However, such a finding would in no way mandate that the attorney-client privilege is inapplicable to the remaining documents in the privilege log. In order to establish that the privilege had been waived, NDC would have to demonstrate that AGG's attorneys revealed confidential client

information in the course of their conversations with third parties. Upon such a showing, the Court would still retain discretion to determine whether any disclosures constituted partial waiver or whether it would be appropriate to impose full waiver as to all communications on the same subject matter. *See Jones*, 696 F.2d at 1072 (distinguishing between clients' "mere[] disclos[ure]" of privileged communication and their "making some use of it," the latter seemingly justifying the imposition of full waiver); *see also United States ex. rel. Mayman v. Martin Marietta Corp.*, 886 F. Supp. 1243, 1252-53 (D. Md. 1995) (applying subject matter waiver to hold that the defendant company waived attorney-client privilege as to in-house legal memoranda when the company disclosed otherwise confidential advice on the same matter to the government).

Because Defendants' assertions of privileges as to the particular documents cited in NDC's Motion to Rescind have not, as of yet, been assessed, this Court will remand the case to the magistrate judge for an examination of those entries in Defendants' privilege log evincing communications between AGG and third parties other than McMaster. On remand, the magistrate judge should attempt to determine (a) whether such documents are in fact protected by the attorney-client privilege; and (b) whether there was any waiver of privilege through the disclosure of confidential client information to third parties other than McMaster.

**IV.**     **CONCLUSION**

   For the aforementioned reasons, Plaintiff's Motion to Rescind Order of Magistrate Judge

[96] is DENIED-in-part and GRANTED-in-part. The Court does not find that any of Magistrate

Judge Connelly's rulings were contrary to law or clearly erroneous; however, the case will be

REMANDED for an examination of certain entries in Defendants' privilege log, as discussed above.

An Order consistent with this Memorandum Opinion shall follow.


   December 2, 2005                    _____/s/_____
                                      Alexander Williams, Jr.
                                      United States District Court